[Civ. No. 9868. First Appellate District, Division Two.—November 18, 1935.]

LILLIAN R. ELMORE, Respondent, v. COUNTY OF LASSEN et al., Appellants.

JOSEPHINE CRANDALL, Respondent, v. COUNTY OF LASSEN et al., Appellants.

OLIVE HAWKINS, Respondent, v. COUNTY OF LASSEN et al., Appellants.

Hamilton Wright, Grover C. Julian and James A. Pardee for Appellants.

Leroy R. Goodrich, Rittenhouse & Snyder and Maurice J. Rankin for Respondents.

STURTEVANT, J.—Miss Elmore, with three others, was driving north on Morse Avenue and C. C. Jeskey, with J. B. Leavitt the sheriff of Lassen County, was driving east on Bayshore Highway and their automobiles collided at the intersection of the two roads which is located a short distance north of San Jose. Miss Elmore and two of the passengers riding with her commenced separate actions. All three actions were tried together. The jury returned verdicts in favor of the plaintiffs and from the judgments entered thereon the defendants have appealed.

In their complaints the plaintiffs alleged negligence in general terms. On the trial the negligence claimed as against the defendants was excessive speed. The defendants denied the charge of general negligence and pleaded contributory negligence. On the trial they introduced evidence to the effect that when their car approached the intersection, and before the driver saw the plaintiffs, the defendants' car was proceeding not to exceed 43 miles an hour. It was contended by the defendants that when they first saw the plaintiffs' car defendants were 95 feet west from the middle line of Morse

Avenue and that plaintiffs' car was 40 feet south of the center line of Bayshore Highway going 20 to 25 miles per hour. At first defendants attempted to pass to their left and in front of the plaintiffs' car thinking the driver would give way, but on seeing she was not going to do so defendants' car then swerved back, the driver put on his brakes, and entered the intersection traveling eight miles per hour, but his left front wheel hit the left rear wheel of plaintiffs' car and after the impact came to a standstill within 12 or 18 inches. The plaintiffs' car continued forward, described a half circle to the right, and turned over completely. There was evidence of skid marks on the highway but defendants throughout contended their car did not make the marks and could not have made them. Therefore there was evidence in the record which would have justified the jury in finding that the defendants had the right of way (sec. 131, subd. [c]); that the plaintiff Miss Elmore was guilty of contributory negligence in failing to allow the defendants to pass in front of her; and that there was no evidence showing a set of circumstances that would render the speed of the defendants at the time and place of the accident unlawful. (*Johnson* v. *Gokey*, 4 Cal. App. (2d) 497 [41 Pac. (2d) 193]; *Pilcher* v. *Tanner Motor Livery*, 138 Cal. App. 558 [33 Pac. (2d) 58].) Relying upon this state of the record the defendants attack certain instructions given at the request of the plaintiffs and they also attack the action of the trial court in modifying an instruction requested by the defendants.

The first attack made by the defendants is made on plaintiffs' instruction 15 which was as follows:

"The California Vehicle Act, section 131 (c) provides as follows: 'The driver of any vehicle who has (1) stopped as required by law at the entrance to a through highway shall yield to other vehicles within the intersection or approaching so closely (2) on the through highway as to constitute an immediate hazard but said driver having so yielded may proceed and other vehicles approaching the intersection (3) on the through highway shall yield to the vehicles so proceeding into or across the through highway'.

"Hence the court instructs you that while it was the duty of the car in which plaintiffs were traveling to stop before entering the through highway on which defendants were driving and to yield to other vehicles upon such through highway

within the intersection or approaching so closely as to constitute an immediate hazard, nevertheless if plaintiffs' car did stop before entering upon such intersection, and the car of the defendants was not within such a distance as to appear to a person of ordinary prudence to constitute an immediate hazard, but was at such distance as to indicate to a person of ordinary prudence that it did not constitute an immediate hazard, the car in which the plaintiffs were traveling had the right to proceed and it was the duty under such circumstances for the defendants' car to yield the right of way to the plaintiffs' car, so proceeding into or crossing the through highway. In other words, if the driver of the car in which plaintiffs were traveling acted as an ordinary prudent person would have acted under like circumstances, she was not guilty of negligence in attempting to cross the highway.'' The defendants complain of the last paragraph. Under the facts of this case the attack is not without merit. On the east side of Morse Avenue, 86 feet south of the southerly boundary line of Bayshore Highway, is a stop sign. Miss Elmore testified she stopped at the sign, but then she drove forward without stopping again. The statute provides for the placing of stop signs as warnings. It does not command drivers to stop within any certain distance of such signs. However, its provisions are mandatory that such drivers stop ''before entering'' a through highway. (Sec. 22½.) The exact spot to stop is made clear by the provisions of another portion of the statute (sec. 131, subd. [c]) which clearly implies that it will be at a point where the driver has a view of the ''vehicles within the intersection or approaching so closely from the left as to constitute an immediate hazard''. The stop sign was near but it was not *at the entrance* of the intersection. Furthermore, there was evidence that from the stop sign one's view of the highway to the left was so obstructed that only a very small portion of it could be seen and one could not ascertain if a vehicle was approaching so closely from the left as to constitute an immediate hazard. The last paragraph was an inaccurate application of the law to the facts.

■ Acting upon the request of the plaintiffs the trial court gave their instruction number 16, which was as follows:

''The California Vehicle Act, in effect at the time of this accident, provided as follows: 'The driver of a vehicle approaching an intersection shall yield the right of way to a

.vehicle which has entered the intersection. When two vehicles enter an intersection at the same time the driver of the vehicle on the left shall yield to the driver on the right'." It will be noted that the instruction is a copy of subdivision (a) of section 131 of the statute. It will be noted also subdivision (a) is addressed to intersections in general. Subdivision (c) of the same section on the other hand is addressed to intersections with a through highway. Such an intersection was the one involved in this case. The latter subdivision was covered by instruction number 21 given at the request of the defendants. The latter instruction was properly given but plaintiffs' instruction number 16 should not have been given, as it was not addressed to any facts in the case. The defendants complain to the effect that the two instructions were conflicting. The plaintiffs reply all of the instructions should be read together and when so read both instructions can be given full force and effect. This reply of the plaintiffs is insufficient in the instant case, the gravamen of which was, which car at the particular intersection had the right of way. It is clear the instructions were conflicting and it is impossible to know which one the jury followed.

■ Acting upon the request of the plaintiffs the trial court gave their requested instruction number 10. It was as follows:

"The California Vehicle Act in effect at the time of this accident provided as follows: 'Any person driving a vehicle on the public highways of this state shall drive the same at a careful and prudent speed not greater than is reasonable and proper, having due regard to the traffic, surface and width of the highway, and no person shall drive any vehicle upon a public highway at such a speed as to endanger the life, limb or property of any person.'

"The California Vehicle Act then provides that 45 miles per hour is the maximum speed permitted by law. Hence, if you find in these cases that the defendants were driving in excess of 45 miles per hour at the time in question, the defendants were violating the law." By chapter 1026, Statutes 1931, section 113 was amended to read as follows: "Sec. 113. . . . (b) Subject to the provisions of subdivision (a) of this section and except in those instances where a lower speed is specified in this act, it shall be lawful for the driver of a vehicle to drive the same at a speed not exceeding the following: . . .

7. Forty-five miles an hour under all other conditions. . . . (d) In any civil action the driver of a vehicle who has operated such vehicle at a speed in excess of the miles per hour set forth in subdivision (b) applicable at the time and place should not be deemed to have been negligent by reason thereof as a matter of law but in all such actions the burden shall be upon the opposing party to establish that the operation of such vehicle at such speed constituted negligence.'' Under the clear wording of said statute it was not unlawful, under some circumstances, at the time and place of the accident involved in this action to drive in excess of 45 miles per hour. (*Newman* v. *Solt*, 8 Cal. App. (2d) 50 [47 Pac. (2d) 289], and cases there cited.) In the instant case there was considerable evidence indicating that the defendants were driving at a speed in excess of 45 miles per hour. It is patent that the instruction was highly prejudicial to the defendants.

The defendants asked an instruction as follows: ''The court instructs the jury that no insurance company is a party to or interested in these actions or any of them.'' The trial court struck out the words ''or interested in'' and as so modified gave the instruction. Its action was clearly correct. There was no evidence that any insurance company was or was not interested.

For the errors indicated above the judgments are reversed.

Nourse, P. J., and Spence, J., concurred.